IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Pacific Capro Industries d/b/a Capro Industries,<br><br>                 Plaintiff,<br><br>vs.<br><br>Global Advantage Distribution Warehouse, LLC d/b/a Global Advantage Distribution Warehouse, Inc., Global Advantage Distribution, Inc., Global Advantage Holding, LLC, Matthew J. Crawley, Kevin C. Snow, and Eric C. Gibson,<br><br>                 Defendants. | 04:08-CV-4155-RBH<br><br><br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR RELIEF, PURSUANT TO RULE 60(a),**<br>**Fed. R. Civ. P.** |

Plaintiff Pacific Capro Industries d/b/a Capro Industries ("Capro") offers this Memorandum in support of its Motion for Relief pursuant to Rule 60(a), Fed. R. Civ. P. Specifically, Capro respectfully submits the Court erred by excluding prejudgment interest from its calculation of damages and overlooked evidence of damages attributable specifically to the allegations of the South Carolina Unfair Trade Practices Act ("SCUTPA") violation. Capro requests the Court amend its Order of Default Judgment to include prejudgment interest and to award treble damages for damages arising from violation of the SCUTPA.

**PROCEDURAL HISTORY**

Capro filed a Complaint against Global Advantage Distribution Warehouse, LLC ("GADW, LLC") d/b/a Global Advantage Distribution Warehouse, Inc. ("GADW, Inc."), Global Advantage Distribution, Inc. ("GAD, Inc."), Global Advantage Holding, LLC ("GAH, LLC"), hereinafter collectively referred to as "Global," Matthew J. Crawley ("Crawley"), Kevin C.

1

Snow and Eric C. Gibson on December 30, 2008. This matter is pending before this Honorable Court pursuant to 28 U.S.C. § 1332 on the basis of diversity jurisdiction.

The Complaint alleges two causes of action for breach of contract, as well as causes of action for intentional and negligent misrepresentations, conversion of goods, violation of the South Carolina Unfair Trade Practices Act and tortious interference with contracts as to Defendant Global. The Complaint further alleges causes of action for disgorgement, civil conspiracy and unjust enrichment as to Defendants Crawley, Snow and Gibson.[1] Answers were filed by counsel on behalf of Global and Crawley. Subsequently, counsel for these defendants moved to withdraw and was relieved. The Magistrate Judge ordered Global to obtain counsel or risk having default judgment entered against them. Additionally, he ordered Crawley to obtain counsel by January 8, 2010 and advised that he would be considered to be proceeding *pro se* if he failed to do so. Defendants Global and Crawley failed to obtain counsel. Capro filed a Motion to Strike the Answers of Global and Crawley on February 8, 2010 on the basis of Global's failure to retain counsel and Crawley's failure to cooperate with discovery.

On August 2, 2010, this Court adopted without objection the Report and Recommendation by Magistrate Judge Shiva V. Hodges and struck the Answers of Crawley and Global. On October 13, 2010, the action was dismissed as to Snow and Gibson due to a negotiated settlement between the parties. On December 8, 2010, the Court noticed the case for jury selection in January of 2011 since Capro had requested a jury trial and a determination of damages was necessary.

On January 1, 2011, Capro filed a Motion for Default Judgment against Global and Crawley wherein Capro waived its right to a jury trial on the issue of damages. Capro submitted

---

[1] Capro settled its claims against Snow and Gibson and dismissed those defendants.

the affidavit of Jules Teffaha, President of Capro, in support of its motion on January 7, 2011. (Entry 136) On January 20, 2011, an Order of Default Judgment was entered. (Entry 137)

## FACTUAL BACKGROUND[2]

Capro is a corporation engaged in the business of shipping and incorporated in and existing pursuant to the laws of the State of California with its principal place of business in Los Angeles County. Defendants Global were alter egos and/or parent companies and/or successors in interest to each other at all times relevant to the instant matter. Defendant Crawley was a member and controlling shareholder of one or more of the Global entities at all times relevant to this instant matter.

On June 2, 2005, Capro contacted Global to inquire about using Global's storage and distribution warehouse located in Myrtle Beach, South Carolina. Capro required a facility to receive incoming merchandise unloaded at several ports on the eastern sea board and store said merchandise until shipped to Capro's customers. Global advertised its storage rate on its website as "FREE MONTHLY WAREHOUSE STORAGE," which was confirmed by Global in an email to Capro on June 2, 2005. Global's free storage rate was advertised without any limitations as to volume of storage space used.

In reliance upon the representations made by Global, Capro incurred costs to transport its goods from its then existing warehouse to Global's warehouse. Between September 2005 and November 2005, Global received several loosely loaded goods from Capro that required rewrapping. Based on Global's rate sheet, Capro was charged Eight Thousand ($8,000.00) Dollars for this service. Capro paid the total amount for this service according to the terms of the

---

[2] All of the factual allegations asserted against Defendants Global and Crawley are deemed admitted due to their default pursuant to Rule 55, Fed. R. Civ. P. See, *Webster Capital Finance, Inc. v. Startrans, Inc.*, 2010 U.S. Dist. LEXIS 109236 (D.S.C., October 13, 2010). The factual background set forth herein is derived from the Complaint and the Affidavit of Jules Teffaha.

rate sheet.

By the end of 2005, Capro had transferred its entire supply of goods to Global's warehouse from its then existing warehouse, taking up approximately 10,440 square feet of storage space. On January 3, 2006, Global first notified Capro that Global had unilaterally changed its rate policy and would now charge a storage rate of fifty ($0.50) cents per square foot per month on all current goods stored at its facility. Global demanded Capro execute a lease agreement with these terms and invoiced Capro Five Thousand Two Hundred ($5,200.00) Dollars on January 6, 2006, for storage fees for January 2006.

On January 27, 2006, Global again invoiced Capro Five Thousand Two Hundred ($5,200.00) Dollars for storage fees for the month of December 2005 in clear violation of Global's advertised 2005 rates. On February 7, 2006, Global invoiced Capro for Five Thousand Two Hundred ($5,200.00) Dollars for storage fees for February 2006. On February 15, 2006, Global sent Capro an email claiming that the total amount of space occupied by Capro's goods was 15,000 square feet. Additionally, Global agreed to excuse all past invoices and charge Capro fifty ($0.50) cents per square foot per month starting from February 1, 2006.

Global requested payment of Seven Thousand Five Hundred ($7,500.00) Dollars as the storage fee for the month of February 2006. Global invoiced Capro again on March 1, 2006, for storage fees for March 2006. In or around March 2006, Capro and Global commenced direct negotiations in the hopes of resolving their business dispute and continuing their business relationship.

Both parties agreed that the storage cost per square foot would be twenty-nine ($0.29) cents effective March 2006 and this rate would be effective throughout the remainder of the year without any disruption to Capro's business. Based on the above agreed upon terms, Capro

forwarded Global a check on April 4, 2006, to cover outstanding storage fee invoices and as partial payment on storage fees for March 2006. Almost immediately after Global cashed Capro's checked dated April 4, 2006, Global demonstrated that it was not negotiating in good faith and in fact had no intention of allowing Capro to store its goods at Global's warehouse for the remainder of the year.

On or about April 19, 2006, Global informed Capro that it had 45 days to remove all of its goods from the warehouse. Notwithstanding Capro's attempt to remove its goods from Global's warehouse within the 45 day deadline, Global prevented Capro from doing so and additionally prevented Capro from making specific delivery shipments of its goods to its customers on three occasions, resulting in actual damages to Capro.

After much delay, Capro's goods were eventually removed from Global's warehouse; however, after inspecting the goods Capro discovered that many pallets were damaged and/or missing completely. Global's employees were solely responsible for the loading of pallets onto trucks at its warehouse. Several pallets loaded by Global's employees were loaded incorrectly and negligently, resulting in damage to the goods that, in many cases, required later re-packing, re-bundling and re-palletizing, all of which resulted in unnecessary costs to Capro. After being informed by Global that all of Capro's goods were removed from Global's warehouse, a detailed inventory was conducted by Capro that revealed many missing goods. These missing goods were documented as arriving at Global's warehouse but at no time leaving Global's warehouse.

Capro sustained damages in the amount of $91,670.00 in the form of missing goods and expenses associated with re-packing, re-bundling and re-palletizing recovered goods. Capro received $25,000 from Snow and Gibson in exchange for dismissing its claims against them.

## THE ORDER OF DEFAULT JUDGMENT

In its Order of Default Judgment, the Court determined that Capro's submissions provide a reasonable basis upon which to rest an award of damages that is easily computable. Further, the Court determined Capro is entitled to actual damages of $91,670.00, representing the value of missing goods and expenses associated with repacking, re-bundling and re-palletizing recovered goods. The Court then reduced Capro's damages by the $25,000.00 received from Defendants Snow and Gibson, resulting in an actual damage award in the amount of $66,670.00.

Capro respectfully submits the Court should have calculated interest at the rate of 8.75% per annum from the date the sum was demandable. As set forth in Paragraph 72 of the Complaint, Defendants Crawley, Snow and Gibson were aware of Capro's claim due to a previous lawsuit arising from the same set of facts and setting forth the same claims advanced in this action. The previous action, bearing civil action number 04:07-333, was filed on January 31, 2007. Accordingly, Capro's demand has been due and owing since at least January 31, 2007. Capro respectfully asserts it is entitled to interest at the rate of 8.75% per annum since January 31, 2007, on the sum of $91,670.00, and that the $25,000.00 received in settlement from Defendants Snow and Gibson should be subtracted from the total of actual damages and interest requested.

## LEGAL STANDARD

Rule 60(a), Fed. R. Civ. P., provides, "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice."

**ARGUMENT**

Capro respectfully submits the Court overlooked parts of the record supporting claims for prejudgment interest and damages under the South Carolina Unfair Trade Practices Act.

1.  **The Court overlooked facts supporting a claim for prejudgment interest.**

State law governs an award of pre-judgment interest in a diversity action. *Liberty Mutual Ins. Co. v. Employee Resource Management, Inc.*, 176 F. Supp. 2d 510 (D.S.C. 2001) (citing, *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999). "The law allows prejudgment interest on obligations to pay money from the time when, either by agreement of the parties or operation of law, payment is demandable, if the sum due is certain or capable of being reduced to certainty." *Id.*, quoting, *APAC Carolina, Inc. Town of Allendale, South Carolina*, 41 F.3d 157, 165 (4th Cir. 1994). South Carolina Code § 34-31-20(A) states: "In all cases of accounts stated and in all cases wherein any sum or sums of money shall be ascertained and, being due, shall draw interest according to law, the legal interest shall be at the rate of eight and three-fourths percent per annum." (Law Co-Op 2000). The statutory language is mandatory, not discretionary.

> This court has held that under South Carolina law, 'ordinarily, the use of the word "shall" in a statute means that the action referred to is mandatory. *Holt v. State Farm Mut. Auto. Ins. Co.*, 870 F. Supp. 658, 664 (D.S.C. 1994) (citing *South Carolina Dep't of Highways and Public Transp. v. Dickinson*, 288 S.C. 189, 341 S.E.2d 134, 135 (S.C. 1986). When a statute is clear is and explicit, there is no room for construction by the court and the court 'must therefore apply it literally. Taken literally, the word "shall" is mandatory. *Holt*, 870 F. Supp. at 664 (citing *State v. Foster*, 277 S.C. 211, 284 S.E.2d 780 (S.C. 1981)). The General Assembly used the word 'shall' twice in § 34-31-20(A). A plain reading of the statute indicates that prejudgment interest shall be awarded on ascertainable amounts of money that are due and owing, and that the rate shall be at 8.75%. The statutory language is unambiguous and, accordingly, mandates an award of prejudgment interest in this matter. *Liberty Mutual*, 176 F. Supp.2d at 540.

> '[T]he fact that the sum due is disputed does not render the claim unliquidated for the purposes of an award of prejudgment interest.' *Babb v. Rothrock*, 310 S.C. 350, 426 S.E. 2d 789, 791 (1993); *Wayne Smith Construction Co, Inc. v. Wolman, Duberstein and Thompson*, 294 S.C. 140, 363 S.E.2d 115 (S.C. Ct. App 1987). 'The proper test for determining whether prejudgment interest may be awarded is whether or not the measure of recovery, not necessarily the amount of damages, is fixed by conditions existing at the time the claim arose.' *Babb*, 426 S.E.2d at 791 (citing 47 C.J.S. *Interest & Usury* §49 at 124-25(1982)). When an otherwise unliquidated claim is capable of being reduced to certainty by a simple mathematical calculation, it can be considered liquidated for the purposes of awarding prejudgment interest. *See* Builders *Transport, Inc. v. South Carolina Prop. & Cas. Ins. Guar. Ass'n.*, 307 S.C. 398, 415 S.E.2d 419, 424 (S.C. Ct. App. 1992). *Liberty Mutual*, 176 F. Supp.2d at 541.

The purpose of prejudgment interest is to compensate the prevailing party for the value of the sum certain lost during the delay imposed by Defendants' refusal to pay the amount due. Without prejudgment interest, Capro sustains greater damages because it has been without the benefit of its goods, or their monetary equivalent, since 2006, as set forth in the Affidavit of Jules Teffaha.

Pursuant to Rule 60(a), Fed. R. Civ. P., the Court should recalculate the award of actual damages in the amount of $91,670.00 to include pre-judgment interest at the rate of 8.75% per annum from January 31, 2007. Capro respectfully submits the pre-judgment interest should be calculated on the total actual damages and added to that amount prior to the subtraction of the $25,000 received from Defendants Snow and Gibson.

2.     **The Court overlooked facts supporting an award for damages under the South Carolina Unfair Trade Practices Act.**

Capro respectfully submits the Court erroneously overlooked the evidence set forth in the pleadings and Affidavit of Jules Teffaha to support a finding of damages incurred as a result of Defendants' violation of the SCUTPA. Paragraph 58 of the Complaint alleges, "Global made deceptive and unfair statements about the storage rate charged to customers for the use of its

warehouse and had no intention of maintaining those rates once the goods were received in the warehouse. **Further, Global had no intention to properly maintain and store the goods entrusted to it for storage.**" (Emphasis added). Paragraph 59 alleges, "As a direct and proximate result, Capro has suffered actual damages as heretofore alleged." The Affidavit of Jules Teffaha states, "I believe Capro is entitled to treble actual damages and attorney's fees pursuant to the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 *et seq.*, due to Global's willful conduct in publishing deceptive and unfair statement about the storage rates charged to customers for the use of its warehouse **and** mishandling and/or destruction of goods entrusted to it for storage, all of which impacts the public interest." (Affidavit of Jules Teffaha, ¶ 29) (Emphasis added).

In rejecting the SCUTPA claim, the Court concluded "the Complaint bases the request for treble damages and attorney's fees on deceptive and unfair statements about the storage rate charged." However, this conclusion overlooks Paragraph 58 of the Complaint, wherein Capro alleges the deceptive practices relate not only to the storage rates, but also to the misrepresentation about the handling of goods.

Additionally, Paragraphs 17-21 of the Affidavit of Jules Teffaha set forth specific allegations about the deceptive storage rates and damages relating to those rates. As set forth in Paragraphs 17 and 21, Capro was presented with a demand for $7,500 for outstanding storage fees and made payment for the outstanding storage fees on April 4, 2006.

Accordingly, the Court erred in overlooking the $7,500 specifically associated with the deceptive storage rate allegations, in addition to, and separate and apart from, the $91,670.00 relating to lost and damaged goods and expenses associated with re-packing, re-bundling and re-palletizing recovered goods. Moreover, the Court's conclusion that the damages relating to lost

and damaged goods arises from the non-SCUPTA causes of action overlooks the sad reality that Global deceived Capro regarding the services it would provide. As a result of Capro's reliance upon Global's false representations, it not only incurred storage costs when it expected storage to be free, but it also lost goods and suffered damaged goods.

Inasmuch as no defense exists to Capro's allegation of a violation of the SCUTPA since Global is in default, Capro respectfully requests the Court re-calculate the award of damages to include, at a minimum, compensation for the $7,500.00 relating to the deceptive storage rates, which must be trebled pursuant to the mandatory provisions of the SCUTPA. Upon trebling, this amount should be added to the award of actual damages relating to the lost and damaged goods previously discussed herein.

## CONCLUSION

Pursuant to Rule 60(a), Fed. R. Civ. P., the Order of Default Judgment previously entered should be revised to include pre-judgment interest and should include an award for damages under the South Carolina Unfair Trade Practices Act.

Respectfully submitted,

**ROGERS TOWNSEND & THOMAS, PC**

/s/ Darra J. Coleman
Darra J. Coleman (Federal Bar No.: 7335)
dcoleman@rtt-law.com
James K. Cluverius, Jr. (Federal Bar No.:10410)
jcluverius@rtt-law.com
220 Executive Center Dr., Suite 109 (29210)
Post Office Box 100200
Columbia, South Carolina 29202
(803) 771-7900 Telephone
(803) 343-7017 Facsimile
*Attorneys for Plaintiff Pacific Capro Industries d/b/a Capro Industries*

March 29, 2011
Columbia, South Carolina